Michael **TAYLOR**, individually and as Next Friend of Chloe Bleu Taylor, Austan William Taylor, and Tristan Michael Taylor, Minor Children, Appellants,

v.

Kelley **LOUIS**, Appellee.

No. 14–10–00654–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 25, 2011.

Joshua Allen Estes, Richmond, for appellants.

Maggie Rico–Zamora, Nicole S. Bakare, Ronald J. Restrepo, Houston, for appellee.

Panel consists of Justices ANDERSON, BROWN, and CHRISTOPHER.

## OPINION

TRACY CHRISTOPHER, Justice.

In this personal-injury case, appellant Michael Taylor, acting for himself and as next friend of his minor children, sued his

former girlfriend, premises owner Kelley Louis, for injuries he received when he was assaulted in Kelley's home by her ex-husband, Hal Louis. Taylor appeals the no-evidence summary judgment granted in Kelley's favor, arguing that he produced sufficient evidence to raise genuine issues of material fact as to his premises-liability and negligent-activity theories of liability. We affirm.

## I. BACKGROUND

On December 26, 2006 appellant Michael Taylor and his three minor children were guests at the home of Taylor's girlfriend, Kelley Louis. Kelley's three children were also at the home. According to Taylor, Kelley's former husband, Hal Louis, called Kelley and asked to speak to their son at about 8:00 a.m. Kelley and Taylor were cooking breakfast at that time, and Kelley told Hal she would have the child call him back. Hal became upset and hung up the telephone, and he subsequently called back and began cursing at Kelley. This time, Kelley hung up the telephone. When Hal called a third time, Kelley did not answer the telephone, but Hal left a message that he was coming over to Kelley's house.

At about 8:30 a.m., Kelley and Taylor heard someone repeatedly ringing Kelley's doorbell or knocking on her door. The children yelled, "It's Hal." Taylor remained in the kitchen while Kelley answered the door. When Kelley opened the door, Hal forced his way into the entryway of the house and refused Kelley's repeated demands that he leave. Hearing this, Taylor walked into the entryway with his cell phone and said to Hal, "I've heard Kelley ask you to leave at least four times. You probably should leave." Hal asked if Taylor was going to make him leave, and Taylor answered, "No, but the police will." As soon as Taylor dialed 911—and in front

of all six minor children in the house, as well as a seventh child that Hal brought with him—Hal attacked Taylor, choking him and attempting to gouge his eyes out. Hal broke off the assault and left before the police arrived. Taylor was taken by ambulance to the hospital. He sustained a torn ligament in his right knee, and he required plastic surgery to repair the lacerations to his eyelids.

Fourteen months later, Taylor sued Kelley. He asserted premises-liability and negligent-activity theories of liability, and sought general, special, and exemplary damages for himself. On behalf of his children, he sought damages for loss of parental consortium and for the mental anguish they sustained from witnessing the assault.

Kelley moved for summary judgment on the grounds there was no evidence that she owed the Taylors any duty, that she breached any duty, or that any act or omission by her proximately caused the Taylors' injuries or damages. The trial court granted Kelley's motion without stating the grounds for the ruling, and allowed Taylor's motion for new trial to be overruled by operation of law.

## II. ISSUES PRESENTED

In seven overlapping issues, Taylor argues that the trial court erred in granting Kelley's summary-judgment motion. In his first issue, he argues that Kelley had a duty to warn or protect her social guests from the criminal acts of a third party. In his second issue, he contends that the assault was foreseeable because "Kelley knew of Hal Louis's past dangerous propensities, steroid use, and anger issues, yet continued to provoke and/or anger him and then opened a locked door allowing Hal's entrance into the home." Again citing Kelley's alleged provocation of Hal, Taylor asserts in his third issue that he was a

foreseeable victim. In his fourth issue, he contends he produced more than a scintilla of evidence that Kelley's conduct was grossly negligent. He asserts in his fifth issue that Kelley failed to disprove that Hal's assault was a superseding cause of Taylor's injuries. In his sixth issue, Taylor contends that it was improper for the trial court to grant summary judgment on the claims asserted under a negligent-activity theory because Kelley did not argue in her motion that there was no evidence of negligent activity. Finally, Taylor argues in his seventh issue that he produced evidence he was injured as a contemporaneous result of Kelley's negligence.

## III. STANDARD OF REVIEW

We review summary judgments de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex.2009) (per curiam) (citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex.2007)). We consider the summary-judgment record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex.2005). We must affirm the summary judgment if any of the movant's theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

In a no-evidence motion for summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. TEX.R. CIV. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex.2009). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). We review the evidence presented by the motion and response in the light most favorable to the nonmovant, crediting evidence favorable to that party if a reasonable juror could, and disregarding contrary evidence unless a reasonable juror could not. *Id.* (citing *City of Keller*, 168 S.W.3d at 827 and *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex.2002)). We sustain a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. The evidence is insufficient if "it is 'so weak as to do no more than create a mere surmise or suspicion'" that the challenged fact exists. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex.2009) (quoting *Kroger Tex. L.P. v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006)).

## IV. ANALYSIS

Negligent activity and premises defect are similar but distinct theories of recovery. *See Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 529 (Tex. 1997); *Mayer v. Willowbrook Plaza L.P.*, 278 S.W.3d 901, 909 (Tex.App.-Houston [14th Dist.] 2009, no pet.). Negligent-activity claims commonly are based on affirmative contemporaneous conduct by the owner while a premises-defect case is based on a failure to act—the owner's failure to take measures to make the property safe. *See Del Lago Partners, Inc., v. Smith*, 307 S.W.3d 762, 776 (Tex.2010).

Negligence consists of a duty, a breach of duty, and damages proximately caused by the breach. *Western Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005). The existence of duty is a question of law for the court to decide from the facts surrounding the incident. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 526 (Tex.1990). Courts determine whether a duty exists by examining factors such as "the risk, foreseeability, the likelihood of injury, the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury,"[1] the relationship between the parties,[2] whether one party had superior knowledge of the risk,[3] whether that party had the right and ability to control the actor whose conduct precipitated the harm,[4] and "any other relevant competing individual and societal interests implicated by the facts of the case."[5] The decision of whether to impose a common-law duty on a social host can be particularly complex due to the "competing societal concerns and public policy issues inherent in such a decision." *Smith v. Merritt,* 940 S.W.2d 602, 604–05 (Tex. 1997).

Premises liability is a special form of negligence in which the premises owner's duty generally is determined by the plaintiff's status as an invitee, licensee, or trespasser. *See Urena,* 162 S.W.3d at 550. Here, it is undisputed that Taylor and his children were licensees on Kelley's property.

A landowner has a duty not to injure a licensee by willful, wanton, or grossly negligent conduct. *City of Dallas v. Reed,* 258 S.W.3d 620, 622 (Tex.2008) (per curiam). If the landowner has actual knowledge of a dangerous condition on the premises and the licensee is unaware of the condition, then the landowner has the additional duty to use ordinary care to either warn the licensee of the condition or make the condition reasonably safe. *Id.* The licensee has the burden to plead and prove that he did not actually know of the condition. *See County of Cameron v. Brown,* 80 S.W.3d 549, 558, 559 (Tex.2002). The landowner's actual knowledge usually is shown by evidence that the landowner received reports of prior injuries or reports of the danger presented by the condition. *See Univ. of Tex.-Pan Am. v. Aguilar,* 251 S.W.3d 511, 513 (Tex.2008). It also can be established by circumstantial evidence that directly or by reasonable inference supports the conclusion that the landowner was actually aware of a dangerous premises condition. *City of Corsicana v. Stewart,* 249 S.W.3d 412, 415 (Tex.2008) (per curiam) (citing *State v. Gonzalez,* 82 S.W.3d 322, 330 (Tex.2002)). But "actual knowledge" is not shown by evidence that the landowner was aware that a dangerous condition could develop over time. *City of Dallas v. Thompson,* 210 S.W.3d 601, 603 (Tex.2006) (per curiam). With regard to the criminal acts of third parties, courts consider not only whether the general danger was foreseeable, but also whether it was foreseeable that the danger would

---

1. *Id.* (citing *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987), *superseded by statute on other grounds* ).

2. *Tex. Home Mgmt., Inc. v. Peavy,* 89 S.W.3d 30, 33 (Tex.2002).

3. *Graff v. Beard,* 858 S.W.2d 918, 920 (Tex. 1993).

4. *Tex. Home Mgmt., Inc.,* 89 S.W.3d at 38 ("[W]e must analyze foreseeability in terms of the known danger and the ability to control the third party's conduct."); *Graff,* 858 S.W.2d at 920 (noting that courts also consider the "right to control the actor whose conduct precipitated the harm").

5. *Tex. Home Mgmt., Inc.,* 89 S.W.3d at 33.

harm a particular plaintiff or one similarly situated. *Finley v. U–Haul Co. of Ariz.,* 246 S.W.3d 185, 187 (Tex.App.-Houston [ 14th Dist.] 2007, no pet.).

## A. Taylor's Allegations

As the Texas Supreme Court has recognized, "[t]he lines between negligent activity and premises liability are sometimes unclear." *Del Lago,* 307 S.W.3d at 776. Here, Taylor maintains that Kelley was liable for his injuries because she committed the following acts or omissions:

1. Kelley failed to provide gates or locked doors;

2. Kelley failed to prevent the problem;

3. Kelley also failed to warn Taylor that Hal was coming over or that Hal had a propensity for violence;

4. Kelley allowed Hal access to the premises;

5. Kelley angered Hal by not calling her son to the phone when Hal first called, by hanging up on him when he called back cursing her, and by failing to answer his subsequent calls; and

6. Kelley failed to prevent Hal from coming to her residence.

Taylor did not associate any of these alleged acts or omissions exclusively with a particular theory of liability. In effect, he contends that each act or omission supports liability under either a negligent-activity or a premises-defect theory.

Although Taylor asserted in his petition that he and his children "were injured by or as a contemporaneous result of [Kelley's] negligent activities as described," most if not all of his allegations are best described as raising a premises-defect claim because Taylor has alleged that Kelley failed to take certain measures to keep the property safe. *Del Lago,* 307 S.W.3d at 776. The gravamen of his complaint is that Kelley, despite her knowledge of an unreasonable risk of harm, caused or permitted an angry, violent person to enter the premises and assault Taylor. Allegations that a premises owner failed to prevent or warn of the risk of criminal assault generally are treated as presenting a premises-defect claim. *See Timberwalk Apartments, Partners, Inc. v. Cain,* 972 S.W.2d 749, 753 (Tex.1998) (explaining that only a premises-defect claim was presented where the plaintiff alleged that the landowner provided inadequate security and the only activity that injured the plaintiff was a third party's criminal conduct). We therefore begin by addressing this theory of liability.

## B. Premises Defect

Property owners owe a duty to those who may be harmed by the criminal activities of others on their property only if the "injury is of such a general character as might reasonably be anticipated" and the injured party is "so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen." *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 551 (Tex.1985) (quoting *Carey v. Pure Distrib. Corp.,* 133 Tex. 31, 35, 124 S.W.2d 847, 849 (1939)). Thus, we evaluate foreseeability by considering both the foreseeability of the particular criminal conduct and the foreseeability that the plaintiff or one similarly situated would be harmed. *Diaz v. DTC W. Tidwell Corp.,* No. 14–08–00402–CV, 2009 WL 3210617, at *2 (Tex.App.-Houston [14th Dist.] Oct. 8, 2009, no pet.) (mem. op.).

Unless the premises owner has "direct knowledge that criminal conduct is imminent," we evaluate the foreseeability of criminal conduct by considering "whether any criminal conduct previously occurred on or near the property, how re-

cently it occurred, how often it occurred, how similar the conduct was to the conduct on the property, and what publicity was given the occurrences to indicate that the landowner knew or should have known about them." *Timberwalk,* 972 S.W.2d at 757. These are frequently referred to as the *"Timberwalk* factors" of "proximity, recency, frequency, similarity, and publicity." *Del Lago,* 307 S.W.3d at 768.

Taylor, however, maintains that the *Timberwalk* factors do not apply, and that this instead is a case in which "the premises owner has actual and direct knowledge that criminal conduct is imminent based on her conduct immediately preceding the assault and her past knowledge of, and experiences with, the criminal actor." In making this argument, he relies on *Del Lago Partners, Inc. v. Smith.*

In *Del Lago,* the plaintiff was seriously injured in a bar fight at closing time "following ninety minutes of heated altercations among intoxicated patrons." *Id.* at 768. The brawl involved "twenty to forty 'very intoxicated' customers'" in two rival groups, and although the groups had been threatening, cursing, and shoving one another for an hour and a half, the premises owner did not call its security personnel, who were patrolling other parts of the property. *Id.* at 764. Moreover, the bar staff not only continued serving alcohol to the hostile groups, but kept the bar open for an extra half-hour to do so. *Id.* at 772.

On these facts, the Supreme Court of Texas held that the bar's owner had a duty to protect the plaintiff because it had (a) "actual and direct knowledge" that violence was imminent, and (b) "ample time and means to defuse the situation." *Id.* at 769. The court determined that the premises owner knew that violence was imminent based on the nature and character of the premises, as well as the participants' immediately preceding conduct. *Id.* at

768–69. As to the nature and character of the premises, the court emphasized that the Del Lago is a 300–acre resort. *Id.* at 765. "Like any similar facility, it recognized the need to provide private security throughout the resort. It did so through a trained security force." *Id.* at 770. As many as six security personnel patrolled the premises at any given time. *Id.* at 765. The assault occurred at the bar, and the court pointed out that, "as common sense dictates, intoxication is often associated with aggressive behavior." *Id.* at 768. As to the second factor, i.e., the participants' immediately preceding conduct, the premises owners "observed—but did nothing to reduce—an hour and a half of verbal and physical hostility in the bar" but "continued to serve drunk rivals who were engaged in repeated and aggressive confrontations." *Id.* at 769.

The court also evaluated the burden in imposing a duty on the premises owner to act. In doing so, the court was careful to point out that "the risk arose in circumstances where the property owner had readily available opportunities to reduce it." *Id.* at 770. But "[i]nstead of calling security, asking patrons to leave, or otherwise bringing the situation under control, the bar staff continued to serve drinks." *Id.* at 772. Finally, the court disposed of the argument that the premises owner had no duty to warn of a danger that was open and obvious by pointing out that the plaintiff was an invitee, and the premises owner is liable to an invitee for injuries from danger of which he is aware "if the possessor should anticipate the harm despite such knowledge or obviousness." *Id.* at 773–774 & n. 37 (quoting RESTATEMENT (SECOND) OF TORTS § 343A(1) (1965) and emphasizing that the plaintiff was an invitee to whom that section applies).

The facts in this case bear no resemblance to *Del Lago.* Here, the assault

took place without warning in a private home on the morning after Christmas in front of seven children. There is no evidence that Hal was intoxicated;[6] Taylor was not an invitee; the attack was not preceded by an extended period of threatening and aggressive behavior; there is no evidence that Kelley had "ample time and means to defuse the situation"; there is no evidence that Kelley did anything to exacerbate the tensions between Hal and Taylor; and Kelley—unlike the premises owner in *Del Lago*—repeatedly told the belligerent actor to leave.

Taylor asserts that Kelley was aware of Hal's "propensity for violence," and thus, it was foreseeable to her that Hal would assault Taylor. Foreseeability usually is determined by whether the defendant is aware of prior, similar conduct by third parties. *Sanders v. Herold*, 217 S.W.3d 11, 17 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (collecting cases that show similar crimes against similar victims). But the summary-judgment evidence shows only that in the course of their seven-year marriage, Hal committed one act of family violence against Kelley at a different location, and two acts of family violence against her at the address where Taylor was assaulted. Specifically, Hal choked Kelley in 2003 while Kelley and Hal were living in Houston. She pressed charges, and Hal was sentenced to one year of probation based on his deferred adjudication of guilt. In December 2005, while the couple were living in Missouri City, Hal grabbed Kelley's wrists and would not let her go, and in March 2006, Hal pushed Kelley across a closet. She again pressed charges, and the couple were divorced in May 2006.

Kelley's knowledge of Hal's history of family violence does not make it foreseeable to her that Hal would assault Taylor in her home. Isolated instances of domestic violence between residents do not indicate an unreasonable risk of assault between unrelated nonresidents on the property. *See, e.g., Timberwalk*, 972 S.W.2d at 758 (pointing out that "a spate of domestic violence in the complex does not portend third party sexual assaults or robberies"); *Tex. Real Estate Holdings, Inc. v. Quach*, 95 S.W.3d 395, 400 (Tex. App.-Houston [1st Dist.] 2002, pet. denied) (explaining that a carjacking was unforeseeable where in the preceding two years, "there was no violent crime in the complex, save one domestic assault between relatives"). There is no evidence of any further acts of family violence after their divorce, and no evidence that Kelley knew Hal threatened or assaulted anyone else during or after their marriage until he attacked Taylor in December 2006. The risk that Taylor would be assaulted at Kelley's home was not foreseeable.

Finally, Taylor argues that Kelley "created a dangerous situation" because she "angered an already violent man" by refusing to call her son to the telephone, hung up the telephone when Hal cursed at her, and did not answer his subsequent phone calls. Because he did not argue in the trial court that Kelley "created" the dangerous condition, we may not consider that argument on appeal. *See* TEX.R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

We therefore overrule Taylor's first, second, third, and fourth issues.

---

6. Taylor points out that according to Kelley, Hal used steroids and marijuana during their marriage. There is no evidence, however, that Hal was under the influence of any substance at the time of the assault, or that any substance played a role in the attack.

## C. Negligent Activity

After Kelley filed the no-evidence motion for summary judgment, Taylor amended his petition to add a negligent-activity theory of liability. He contends on appeal that Kelley did not challenge any element of this liability theory. But as previously discussed, Kelley moved for summary judgment on the grounds that there was no evidence that she owed a duty, breached a duty, or proximately caused any of the Taylors' damages. Duty, breach, and proximate cause are elements of negligent-activity claims just as they are elements of a premises-defect claim. This motion encompassed both causes of action. *See Lampasas v. Spring Ctr., Inc.,* 988 S.W.2d 428, 436–37 (Tex. App.-Houston [14th Dist.] 1999, no writ). We overrule Taylor's sixth issue.

On appeal, Taylor does not address the elements of duty or breach in connection with his negligent-activity theory. He contends only that summary judgment was improper as to his negligent-activity theory of liability because he was injured as a contemporaneous result of Kelley's negligent activity in "antagonizing" Hal by demanding that he leave her house. *See Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992) ("Recovery on a negligent activity theory requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity."). While Taylor makes that argument, he presented no evidence that Kelley's actions proximately caused Hal to act violently. It was not until Taylor entered the hallway, told Hal to leave, and started to call 911 that Hal became violent. *Cf. Urena,* 162 S.W.3d at 551–52 (affirming no-evidence summary judgment in a negligent-activity/premises-defect criminal-activity case based on absence of evidence of causation). Moreover, Kelley could have breached no duty to Taylor by telling Hal to leave her home. *Cf. Del Lago,* 307 S.W.3d at 772 (holding that premises owner breached duty to invitees by, *inter alia,* failing to ask aggressive patrons to leave). Thus, we overrule Taylor's seventh issue.

## V. Conclusion

One who controls premises does not thereby insure that those on the premises will not become the victim of a crime. *See Trammell Crow Cent. Tex., Ltd. v. Gutierrez,* 267 S.W.3d 9, 17 (Tex.2008). Because Taylor produced less than a scintilla of evidence to support foreseeability or proximate cause, the trial court properly granted summary judgment as to his claims. And because Taylor cannot recover, his children cannot recover on their bystander and loss-of-consortium claims. *See Am. Indus. Life Ins. Co. v. Ruvalcaba,* 64 S.W.3d 126, 144 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). We therefore affirm the trial court's judgment without addressing Taylor's remaining issue.