**Affirmed and Opinion Filed July 19, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-17-00172-CV**

**J. MANUEL DIAZ, Appellant**
**V.**
**D.R. WRIGHT ENTERPRISES, INC. AND WRIGHT WAY CONSTRUCTION**
**ENTERPRISES, INC., Appellees**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-01413-J**

## MEMORANDUM OPINION

Before Justices Bridges, Evans, and Whitehill
Opinion by Justice Bridges

Appellant J. Manuel Diaz sustained injuries after falling off a roof. He filed suit against

appellees D.R. Wright Enterprises, Inc. and Wright Way Construction Enterprises, Inc. (Wright

Way) alleging negligence, premises liability, and negligent activity.[1] Wright Way filed a

traditional and no-evidence motion for summary judgment, which the trial court granted. On

appeal, Diaz argues the trial court erred by granting summary judgment. We affirm.

### Background

Ray Wright is the owner and president of Wright Way, a residential and commercial

construction company. On June 6, 2013, Wright entered into an oral contract on behalf of Wright

---

[1] Diaz also alleged a cause of action for negligence per se, but he does not assert on appeal that the trial court erred in granting summary judgment on that cause of action.

Way with Kent Ellis to provide various construction services, including replacing the roof on Ellis's home and garage (the Project).

Wright Way later entered into an oral agreement with Francisco Marin, a roofing contractor Wright Way had used many times in the past, to provide labor, tools, and equipment to remove and replace shingles on the Ellis roof. Marin provided a bid of $3,760, which included providing labor, tools, and equipment (but not roofing material) and hauling of debris. Wright Way agreed to provide shingles, nails, and felt paper for the Project.

Marin subsequently entered into an oral agreement with Diaz, whom Marin had worked with over the past twenty-five years "from time to time on projects." Diaz agreed to provide all the labor, tools, and equipment for the Project. Wright had known Diaz for about five years and believed he was a competent roofer. However, Wright did not have a relationship with Diaz other than through Marin and had only worked with Diaz two or three times.

Diaz and his crew replaced the roof on the home on June 14, 2013. On June 15, 2013, Diaz began replacing the garage roof. Shortly before noon, Wright received a call from Marin, who told him Diaz fell off the roof after removing some shingles and slipping on the old felt paper underneath. Wright took Diaz to the hospital for treatment of his injured foot.

Diaz's crew finished the Project on or about June 15, 2013. Wright Way paid Marin for the work on June 17, 2013. Marin subsequently paid Diaz and sent him a 1099 to report his income from the Project.

Diaz filed suit against Wright Way for negligence, negligent activity, and premises liability. Wright Way filed a traditional and no-evidence motion for summary judgment arguing, among other things, that it did not owe a duty to Diaz because Diaz was an independent contractor. The trial court granted Wright Way's summary judgment motion without specifying the grounds. This appeal followed.

**Objections to Summary Judgment Evidence**

In his first issue, Diaz argues the trial court abused its discretion by (1) considering Ray Wright's affidavit (exhibit A) and Francisco Marin's affidavit (exhibit B) attached to Wright Way's summary judgment motion because the evidence was not competent and (2) considering Wright Way's summary judgment reply and attached evidence because it was untimely.

We begin by considering Diaz's objections to the two affidavits attached to Wright Way's motion for summary judgment.

For preservation purposes, objections to "form" and "substance" are treated differently. *See Stewart v. Sanmina Tex. L.P.*, 156 S.W.3d 198, 207 (Tex. App.—Dallas 2005, no pet.). Failure to affirmatively show that the affiant had personal knowledge or that facts stated are "true and correct" are defects in form and must be preserved in the trial court. *Id.* (citing *Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex.1990); *see also Bastida v. Aznaran*, 444 S.W.3d 98, 104 (Tex. App.—Dallas 2014, no pet.); *Bradley v. Mid-Century Ins. Co.*, No. 05-05-00856-CV, 2006 WL 1545324, at *1 (Tex. App.—Dallas June 7, 2006, no pet.) (mem. op.).[2] An objection that a party is an interested witness is also a defect in form that must be preserved in the trial court. *See Ayati-Ghaffari v. Gumbodete*, No. 05-14-01019-CV, 2015 WL 4482158, at *5 (Tex. App.—Dallas July 23, 2015, no pet.) (mem. op.). Accordingly, by failing to obtain a ruling from the trial court on his personal knowledge and interested witness objections, Diaz cannot raise these objections on appeal. *Id.*; *Bastida*, 444 S.W.3d at 104.

---

[2] To the extent Diaz argues lack of personal knowledge is a defect in substance that may be raised for the first time on appeal, we have recognized that failure to show how the affiant had personal knowledge is a defect in form; however, "if an affidavit on its face establishes the *lack* of personal knowledge, this would constitute a defect in substance." *See Bradley*, 2006 WL 1545324, at *1 n.1; *see also Old Republic Ins. Co. v. Cross*, No. 05-14-01204-CV, 2015 WL 8014402, at *2 (Tex. App.—Dallas Dec. 7, 2015, no pet.) (mem. op.). Diaz's objected to Wright and Marin's affidavits because they did not explain how they acquired personal knowledge, not that the affidavits, on their face, established a lack of personal knowledge.

Defects in the substance of the evidence do not require a written ruling, and such objections may be raised for the first time on appeal. *Stewart*, 156 S.W.3d at 207; *Thompson v. Curtis*, 127 S.W.3d 446, 450 (Tex. App.—Dallas 2004, no pet.). Substantive defects are those that leave the evidence legally insufficient and include affidavits which are nothing more than legal or factual conclusions. *Stewart*, 156 S.W.3d at 207; *Bastida*, 444 S.W.3d at 105. A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Brown v. Brown*, 145 S.W.3d 745, 751 (Tex. App.—Dallas 2004, pet. denied).

Diaz argues he "objected to Mr. Wright's statements in the last four paragraphs of his affidavit because they are legal conclusions which he is unqualified to state or factual conclusions unsupported by any facts or explanations." Diaz also objected to the first sentence of the last paragraph of Marin's affidavit because they are "nothing more than legal or factual conclusions . . . and does not provide the underlying facts to support" them. We have held that such objections are not sufficiently specific. For example, in *Stewart v. Sanmira Texas LP*, we concluded "simply quoting one or more sentences from particular paragraphs and stated 'the following evidence is improper because it is conclusory and/or is not based on personal knowledge," was not sufficiently specific. 156 S.W.3d at 207. We also concluded "identifying only the number of particular paragraphs and exhibits" was not enough to explain how statements were conclusory. *Id.*; *see also Anderson v. Limestone Cnty.*, No. 10-07-00174-CV, 2008 WL 2629664, at *2–3 (Tex. App.—Waco, July 2, 2008, pet. denied) (mem. op.); *Morales v. Uptown Props., Inc.*, No. 05-05-00295-CV, 2005 WL 3418603, at *3 (Tex. App.—Dallas Dec. 1, 2005, no pet.) (mem. op.) (objections that statements are conclusory may not be conclusory themselves). Diaz's complaints about Wright's and Marin's affidavits suffer the same flaws. Diaz failed to "provide a description of the particular basis for the objection" or offer any explanation as to why he believed those portions of the affidavits are conclusory. Accordingly, we overrule Diaz's first issue to the extent he raised

objections to Wright's and Marin's affidavits, and we shall consider both documents in our summary judgment review.

We now consider whether the trial court abused its discretion by considering Wright Way's reply and attached evidence to Diaz's response to the summary judgment motion.

Diaz filed his response to Wright Way's summary judgment motion on January 13, 2017. The hearing on the motion was set for January 20, 2017. Under Dallas County Local Rule 2.09, a reply brief must be filed and served no less than three days before the hearing. *See* DALLAS CNTY. LOC. R. 2.09 (reply briefs in support of a motion for summary judgment must be filed and served no less than three days before the hearing). Wright Way filed its reply, with attached evidence, on January 18, 2017. The attached evidence consisted of two corrected pages from Wright's oral deposition taken on August 1, 2016.

Relying on Dallas County Local Rule 2.09, Diaz argues Wright Way's summary judgment reply was untimely and should not have been considered by the trial court. First, the record does not reflect that Diaz objected, either in writing or at the summary judgment hearing, to the trial court's consideration of the reply or the attached evidence. Thus, Dias did not preserve any error as to the trial court's consideration of the reply or attached evidence. TEX. R. APP. P. 33.1; *Alaniz v. Hoyt*, 105 S.W.3d 330, 340 (Tex. App.—Corpus Christi 2003, no pet.); *Thompson v. Jefferies & Co.*, No. 14-00-01477-CV, 2002 WL 1970130, at *3 n.1 (Tex. App.—Houston [14th Dist.] Aug. 15, 2002, no pet.) (lack of objection to summary judgment reply and attached evidence filed two days before hearing preserved nothing for review).

In any event, local rule 2.09 provides, "Briefs not filed and served in accordance with this paragraph *likely* will not be considered." *Id*.[3] By including the word "likely," the rule provides

---

[3] Generally, absent this local rule, courts have held there is no deadline for filing a reply to a summary judgment response, and a reply may be filed up until the day of the hearing. *Herrington v. Cote*, No. 01-04-00212-CV, 2007 WL 926622, at *2 (Tex. App.—Houston [1st Dist.] Mar. 29, 2007, no pet.) (mem. op.); *Cmty. Initiatives, Inc. v. Chase Bank of Tex.*, 153 S.W.3d 270, 280 (Tex. App.—El Paso 2004, no pet.); *Shelton v. Sargent*, 144 S.W.3d 113, 119 (Tex. App.—Fort Worth 2004, pet. denied).

discretion to the trial court to consider documents filed outside of the local rule's stated deadlines. Such discretion is consistent with the wide discretion given trial courts in managing their docket. *See, e.g., Bagwell v. Ridge at Alta Vista Invs. I, LLC*, 440 S.W.3d 287, 292 (Tex. App.—Dallas 2014, pet. denied). Before ruling on the motion, the trial judge stated she had read "all the depositions," indicating she exercised her discretion to consider the reply and attached evidence. *Morales v. Barnes*, No. 05-17-00316-CV, 2017 WL 6759190, at *5 (Tex. App.—Dallas Dec. 29, 2017, no pet.) (mem. op.) (trial court's questions at hearing indicated her inclination to exercise discretion to rely on local rule 2.09 to not consider documents filed less than three days before hearing). Further, at the hearing, Diaz referenced the deposition testimony attached to the reply to argue the "corrected" testimony created a fact issue as to whether Diaz was an employee rather than an independent contractor. Accordingly, the trial court did not abuse its discretion by considering Wright Way's summary judgment reply and attached corrected deposition testimony.

Having considered and overruled all of Diaz's objections to the summary judgment evidence, we now turn to the merits of Wright Way's no-evidence and traditional motion for summary judgment.

**Standard of Review**

The standards of review for traditional and no-evidence summary judgments are well known. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). With respect to a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. TEX. R. CIV. P. 166a(i); *Gish*, 286 S.W.3d at 310. To defeat a no-evidence summary judgment, the nonmovant is required to produce evidence that raises a

genuine issue of material fact on each challenged element of its claim. *Gish*, 286 S.W.3d at 310; *see also* TEX. R. CIV. P. 166a(i).

In reviewing both a traditional and no-evidence summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Gish*, 286 S.W.3d at 310.

When a party files a hybrid summary judgment motion on both no-evidence and traditional grounds, we first review the trial court's judgment under the no-evidence standard of review. *Rico v. L-3 Commc'ns Corp.*, 420 S.W.3d 431, 439 (Tex. App.—Dallas 2014, no pet.). Should we determine summary judgment was appropriate under the no-evidence standard, we need not address issues related to the traditional summary judgment motion. *Id*. However, if the Court is required to affirm the trial court's ruling on traditional grounds, then we only address the traditional grounds. *See Shih v. Tamisiea*, 306 S.W.3d 939, 945 n.8 (Tex. App.—Dallas 2010, no pet.).

## Negligence and Negligent Activity

Because it is dispositive, we first address whether Diaz was an independent contractor and whether he produced evidence of a genuine issue of material fact concerning whether Wright Way owed him a duty because Wright Way retained "some control" over his work.

The test to determine whether a worker is an employee rather than an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the work. *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002). The employer controls not merely the end sought to be accomplished, but also the means and details of its accomplishment. *Id*. We measure the right to control by considering: (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary

–7–

tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job. *Id.*

Here, Diaz testified he learned about the Project from Marin and had never contracted with Wright Way. He had only worked on two or three past projects for Wright Way through Marin. Diaz testified Marin agreed to pay him $30 per square of roofing, indicating payment was for the job and not per hour. Diaz also received a 1099 from Marin rather than a W-2 form. *See id.* (reporting of income on a 1099 instead of W-2 was one factor indicating independent contractor status).

Diaz provided the ladders, hammers, debris trailer, and his own truck for the Project. Wright Way did not provide any tools or equipment to Diaz for the Project. To the extent Diaz argues Wright Way exercised control over the Project because Wright Way provided the nails, paper, and shingles for the Project, such facts are not evidence indicating Wright Way controlled the details of how Diaz performed his job of installing a new roof. *See, e.g., Granger v. Tealstone Contractors, L.P.*, No. 05-04-00636-CV, 2005 WL 565098, at *2 (Tex. App.—Dallas Mar. 11, 2005, pet. denied) (mem. op.) (no evidence that defendant actually exerted control over the details of the work). Similarly, Wright's request that Diaz not remove the old paper before installing new shingles was a specification of the job, not control of how Diaz was to perform his work once the old paper was exposed. In fact, when asked if Wright ever told him how to do his job, Diaz said, "Look, he's never going to tell you, you got to put the shingles this way." Diaz explained, "We know how to do the job," and "The contractor doesn't have the right to say I want it like this."

Finally, Wright did not tell Diaz when to stop or start working except on the first day when Ellis requested work not start before 7:30 a.m. as not to disturb his ailing wife. *See, e.g., Hernandez v. Hammond Homes, Ltd.*, 345 S.W.3d 150, 154 n.3 (Tex. App.—Dallas 2011, pet.

denied) (an employer has authority to tell an independent contractor to start or stop work, inspect progress, and receive reports without subjecting himself to liability as a master).  Accordingly, we conclude Wright Way conclusively established Diaz was an independent contractor.[4]

We now consider whether Diaz produced evidence of a genuine issue of material fact concerning whether Wright Way owed him a duty because Wright Way retained "some control" over his work.

The elements of a negligence claim are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach.  *Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W.3d 338, 352 (Tex. 2015).  The threshold inquiry is whether the defendant owes a legal duty to the plaintiff.  *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).  Whether Wright Way owed Diaz a duty is a question of law.  *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009).

Generally, an employer of an independent contractor does not owe a duty to ensure that the independent contractor performs his work in a safe manner.  *Hernandez*, 345 S.W.3d at 153.  Further, a general contractor owes the same duty as a premises owner to an independent contractor's employee.  *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999).  However, one who retains a right to control the subcontractor's work may be held liable for negligence in exercising that right.  *Hernandez*, 345 S.W.3d at 153.  Such a limited right arises if a general contractor retains control over a subcontractor's methods of work or operative details to the point that the subcontractor is not entirely free to do the work in his own way.  *Arana v. K. Hovnanian Homes-DFW, L.L.C.*, No. 05-17-00367-CV, 2018 WL 3017307, at *2 (Tex. App.—Dallas June 18, 2018, no pet.) (mem. op.) (citing *Koch*, 11 S.W.3d at 155).  The general contractor's "duty of

---

[4] Having concluded Diaz is an independent contractor, we need not consider any arguments related to whether Wright Way, as an employer, owed a duty to him as an employee to provide necessary instrumentalities to safely perform work.  *See, e.g., Kroger Co. v. Elwood*, 197 S.W.3d 793, 794–95 (Tex. 2006) (discussing duties of employers to employees in providing safe workplace); *see also* TEX. R. APP. P. 47.1 (opinion should be as brief as practicable and address issues necessary to disposition of appeal).

–9–

reasonable care is commensurate with the control it retains" over the subcontractor. *Id*. The more the general contractor controls the independent contractor's work, the greater the general contractor's responsibility is for any injuries that result. *Id*.

However, general supervisory control that does not relate to the activity causing the injury is not sufficient to create a duty. *Id*. Merely exercising or retaining a general right to recommend a safe manner for the independent contractor's employees to perform their work is not enough to impose a duty. *Koch*, 11 S.W.3d at 155. In addition, there must be a nexus between the condition or activity that caused the injury and a general contractor's retained supervisory control. *Arana*, 2018 WL 3017307, at *2.

A party can prove a right to control in two ways: first, by evidence of a contractual agreement that explicitly assigns the employer a right to control; and second, in the absence of a contractual agreement, by evidence that the employer actually exercised control over the manner in which the independent contractor performed his work. *Hernandez*, 345 S.W.3d at 153. In this case, there was no written contract between Wright Way and Diaz. Therefore, we must determine whether Wright Way actually exercised any control over the manner in which Diaz performed his work relating to the activity that caused his injury.

Diaz focuses on statements from Wright and Ellis stating Wright was in charge of safety at the job and should have provided fall-protection equipment. However, evidence of the potential or possibility of control is not evidence that actual control is exercised or retained. *See Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex. 1999). Moreover, we have addressed a similar argument in *Hernandez*. In that case, we concluded an independent contractor who fell off a roof and alleged the home builder was negligent in failing to provide fall protection could not survive summary judgment by arguing the supervisor had knowledge of the risk of roofers' falling and the supervisor agreed he could have provided protection to prevent the fall.

–10–

345 S.W.3d at 154 ("knowledge of the risk of roofers' falling and appellees' failure to require fall-protection equipment is not evidence that Stroud and appellees actually exercised control over the manner in which Brito's employees performed their work"). Similarly, Diaz's contention that Wright was in charge of safety and did not provide safety equipment is not evidence that Wright Way exercised control over the manner in which Diaz installed the roof.

Diaz next argues Wright's inspections of the Project was evidence of some control. However, a contractor has the authority to inspect progress without subjecting himself to liability. *See, e.g., Hernandez*, 345 S.W.3d at 154 n.3. Diaz presented no evidence that during any inspection Wright told him how to do his job such that Wright Way was exercising control.

Finally, Diaz argues he raised a genuine issue of material fact regarding control because Wright Way provided the nails and shingles and Wright told him what he wanted done, for example, instructing Diaz to put on 30-year shingles, wanting "all the valleys cut," and telling Diaz not to remove the old paper before installing new shingles. To create a duty, there must be a nexus between the condition or activity that caused the injury and a general contractor's retained supervisory control. *Arana*, 2018 WL 3017307, at *2. Providing materials for the Project is not evidence of such a nexus. Further, Diaz has not provided evidence explaining how instructions to cut "all the valleys" related to his injury. While instructing Diaz not to replace the old paper before installing new shingles was a detail of the Project, it was not an "operative detail to the point" Diaz was not entirely free to do the work in his own way. *See Koch*, 11 S.W.3d at 155 (limited duty arises when contractor retains control over methods of work or operative details). Instead, Wright Way's decision to not replace the paper was a job specification. Further, Diaz presented no evidence that Wright Way controlled how Diaz removed the paper and then replaced the shingles. Rather, Diaz testified it is a "common practice" for roofers to walk on old paper, and he knew he needed to be careful while working on a roof because paper, even new paper, can tear. Further,

–11–

Diaz admitted Wright did not tell him how to do his job, and "he's never going to tell you, you got to put the shingles this way." Accordingly, we conclude, as a matter of law, Wright Way did not owe Diaz a duty, and Diaz did not raise a genuine issue of material fact to overcome summary judgment on his negligence cause of action.

We now consider whether the trial court properly granted Wright Way's motion for summary judgment on Diaz's negligent activity claim. Duty, breach, and proximate cause are elements of a negligent activity claim. *See, e.g., Taylor v. Loui*s, 349 S.W.3d 729, 738 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Diaz argues he raised a genuine issue of material fact regarding whether his injuries arose from an activity on the premises or as a contemporaneous result of that activity because Wright told him not to remove the old paper and did not insist he wear proper safety equipment which contributed to his fall. As previously discussed, Wright Way did not owe a legal duty to Diaz. Without evidence of such a duty, his negligent activity claim fails. *See Oncor Elec. Delivery Co. v. Murillo*, 449 S.W.3d 583, 592 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

Having affirmed the trial court's summary judgment ruling on traditional grounds, we need not address or review the no-evidence grounds. *See Shih*, 306 S.W.3d at 945 n.8.

### Premises Liability

Diaz argues the trial court erred by granting summary judgment on his premises liability claim because, among other things, he presented evidence creating a genuine issue of material fact regarding Wright Way's duty to warn. Wright Way responds Diaz failed to present evidence of a duty to warn and the two recognized exceptions do not apply, or alternatively, there is no evidence to support them.

In a premises liability case, a landowner or general contractor is liable to employees of an independent contractor only for claims arising from a concealed, pre-existing defect rather than

–12–

from the contractor's work. *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 215 (Tex. 2008). "With respect to existing defects, an owner or occupier has a duty to inspect the premises and warn of concealed hazards the owner knows or should have known about." *Id.* (quoting *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 295 (Tex. 2004)); *see also Austin v. Kroger Tex., LP*, 465 S.W.3d 193, 203 (Tex. 2015) (landowner has duty to make safe or warn against any concealed, unreasonably dangerous condition of which the landowner is or should be aware, but the invitee is not). However, in most cases, a contractor or landowner owes no duty to protect an invitee against a dangerous condition that is open and obvious or known to the invitee. *Austin*, 465 S.W.3d at 201. Such is the case because when the condition is open and obvious or known to the invitee, the landowner is not in a better position to discover it. *Id.* When invitees are aware of dangerous premises conditions—whether because the danger is obvious or because the landowner provided an adequate warning—the condition will, in most cases, no longer pose an unreasonable risk because the law presumes that invitees will take reasonable measures to protect themselves against known risks, which may include a decision not to accept the invitation to enter onto the premises. *Id.*

The Texas Supreme Court has provided two exceptions to this general rule: (1) the criminal-activity exception, meaning a dangerous condition results from the foreseeable criminal activity of a third party and (2) the necessary-use exception, meaning the invitee necessarily must use the unreasonably dangerous premises and despite the invitee's awareness and appreciation of the dangers, the invitee is incapable of taking precautions that will adequately reduce the risk. *Id.* at 204.

The evidence relied on by Diaz is as follows: (1) Wright Way never went up on the roof before anyone started working to inspect its condition and ascertain whether it could be safely used without wearing a safety harness and lanyard properly tied onto an anchor point; (2) Wright Way

–13–

exercised control over how Diaz performed his work;[5] (3) Wright knew the roof was seven feet high and OSHA regulations require safety devices for employees working over six feet high; (4) Wright admitted he never saw anyone using safety harnesses; (5) Wright would not admit working on a roof over seven feet tall without safety protection was a hazardous condition; (6) he was aware if someone fell off the roof they could suffer an injury; (7) he never inspected the roof after telling Diaz not to replace the old paper to see if there was a potential danger and did not tell Diaz to be careful because the old paper might be slippery or tear.

First, Texas courts, including this Court, have held that "the common law duties imposed by state law are not expanded by OSHA regulations." *See Arana*, 2018 WL 3017307, at *7. Thus, Diaz's OSHA argument is not evidence creating a fact issue. Likewise, to the extent Diaz argues Wright (1) did not inspect the roof first to ascertain if safety equipment was necessary, (2) would not admit such work was dangerous, and (3) did not see anyone wearing safety equipment, Diaz testified in his deposition "everything was fine" with the Project's roof. He explained the roof was considered a 4-12 roof, meaning it was "flat" and "any person could walk on it." Diaz had never used a safety line on that type of roof and had never seen any other roofers use a safety line on one that flat. As we concluded in *Hernandez*, the danger of falling off a roof and the lack of fall protection, such as a safety-rope system or scaffolding, was open and obvious, not a concealed defect. 345 S.W.3d at 156. Wright Way's only duty was to warn Diaz of concealed defects he might encounter in doing his work. The danger of falling and the lack of fall protection were not concealed defects, and Wright Way owed no duty to Diaz to warn him. *Id*.

Diaz further relies on *Buchanan v. Rose*, 159 S.W.2d 109, 110 (Tex. 1942) for the proposition that "if a party negligently creates a dangerous situation, it then becomes his duty to

---

[5] As explained above, we have concluded Wright Way did not exercise control over the project. To the extent he argues Wright exercised control because he told Diaz not to replace the old paper, such a request is a specification of the job. Further, Diaz testified in his deposition the person doing the roofing "know[s] how to do it." He said, "We know how to do the job."

do something about it to prevent injury to others if it reasonably appears or should appear to him that others . . . may be injured." However, Diaz has not provided any evidence supporting his argument. Diaz's argument is premised on the fact that Wright instructed him to not replace the old felt paper, which caused him to slip and fall while replacing the shingles. The record does not contain any evidence that walking on old felt paper created a dangerous situation. Rather, Diaz admitted regardless of whether he replaced the paper or installed new paper over the old paper, he must walk on the old paper as part of the process. It is a "common practice" for roofers to walk on old paper. "You have to do it." He knew he needed to be careful while working on a roof because paper, even new paper, can tear. "You have to be careful the whole time." When asked if he found anything unsafe about the roof he did not ordinarily encounter, such as the old paper, he answered, "No. Well, to me everything was fine; everything was fine." Thus, Diaz provided no evidence that Wright negligently created a dangerous situation by requiring him to shingle over old paper. Rather, the evidence established that the condition is common in roofing and Diaz knew to be careful. As such, the condition was open and obvious and known to the invitee. The condition, therefore, did not pose an unreasonable risk because the law presumes Diaz would have taken reasonable measures to protect himself against known risks, which may have included a decision not to accept the invitation to enter onto the premises. *Austin*, 465 S.W.3d at 201. The record does not indicate Diaz ever told Wright he was uncomfortable with not replacing the paper or that he did not want to continue the Project under such circumstances.

Finally, Diaz has provided no evidence that an exception to the general rule applies. To the extent he argues the necessary-use exception applies, he has provided no evidence that he had to use an unreasonably dangerous premises and despite his awareness and appreciation of the dangers, he was incapable of taking precautions that would adequately reduce the risk. Again, the

–15–

evidence shows he knew he needed to be careful walking on old paper and safety harnesses were not used on "flat" roofs.

Accordingly, we conclude Diaz failed to produce evidence creating a genuine issue of material fact that Wright Way owed him a duty. As such, the trial court did not err in granting Wright Way's motion for summary judgment on his premise liability claim. *See, e.g., Hernandez*, 345 S.W.3d at 156–57.

**Conclusion**

The judgment of the trial court is affirmed.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

170172F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

J. MANUEL DIAZ, Appellant

No. 05-17-00172-CV      V.

D.R. WRIGHT ENTERPRISES, INC.
AND WRIGHT WAY CONSTRUCTION
ENTERPRISES, INC., Appellees

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-15-01413-J.
Opinion delivered by Justice Bridges.
Justices Evans and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee D.R. WRIGHT ENTERPRISES, INC. AND WRIGHT
WAY CONSTRUCTION ENTERPRISES, INC. recover their costs of this appeal from appellant
J. MANUEL DIAZ.

Judgment entered July 19, 2018.