

# IN THE
# TENTH COURT OF APPEALS

## No. 10-23-00034-CV

**LESLIE SAPP GONTAREK,**

                                          **Appellant**

 **v.**

**VIRGINIA LOUANNE SAPP AKA LOU ANN SAPP, INDIVIDUAL, AND LOUANNE SAPP AS EXECUTRIX OF THE ESTATE OF IVAN DOYLE SAPP,**

                                          **Appellees**


**From the 369th District Court
Leon County, Texas
Trial Court No. 20-0121CV**


## MEMORANDUM OPINION


Appellant, Leslie Sapp Gontarek, was injured when she fell through a porch on property owned by appellees, Virginia Lou Ann Sapp and Lou Ann Sapp as Executrix of the Estate of Ivan Doyle Sapp.[1]  Gontarek filed suit, purportedly alleging premises-liability and negligence claims against appellees.  Appellees filed an answer generally

---

[1] Virginia Lou Ann Sapp ("Ann") is Leslie's stepmother, and Ivan was Leslie's father.

denying the allegations contained in Gontarek's live pleading and asserting a number of defenses. Appellees later filed traditional and no-evidence motions for summary judgment, arguing that the defect was open and obvious and known to Gontarek and that Gontarek failed to present evidence for each element of her premises-liability cause of action.[2] The trial court granted appellees' motions for summary judgment. Gontarek filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. APP. 21.8.

In four issues, Gontarek contends that: (1) the trial court erred by granting summary judgment in favor of appellees; (2) the trial court erred by impliedly finding as a matter of law that the defect in the porch and its danger was open and obvious; (3) she presented sufficient evidence to raise a fact issue on each of her causes of action; and (4) the trial court erred by failing to grant a new trial. We reverse and remand.

STANDARD OF REVIEW

We review a trial court's order granting summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In doing so, we indulge every reasonable inference in favor of the nonmovant, resolve any doubts in favor of the nonmovant, and take as true all evidence favorable to the nonmovant. *See Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017). In a traditional motion

---

[2] Although Gontarek alleges that she pled a negligence cause of action in addition to her premises-liability cause of action, appellees believe that Gontarek's claim is a premises-liability claim and, thus, only sought summary judgment on Gontarek's premises-liability claim.

for summary judgment, the movant must state specific grounds, and if the movant conclusively negates at least one essential element of a cause of action or conclusively established all the elements of an affirmative defense, the movant is entitled to summary judgment. *See* TEX. R. CIV. P. 166a(c); *see also KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). When reviewing a traditional motion for summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

In a no-evidence summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the non-movant bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *see Grant*, 73 S.W.3d at 215. We sustain a no-evidence summary judgment when: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

A nonmoving party is not required to marshal its proof; however, it must present evidence that raises a genuine fact issue on the challenged elements. *See Grant*, 73 S.W.3d at 215. "A genuine issue of material fact exists if more than a scintilla of evidence

establishing the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

"If the order granting the summary judgment does not specify the grounds upon which judgment was rendered, we must affirm the summary judgment if any of the grounds in the summary judgment motion is meritorious." *Lotito v. Knife River Corp.-S.*, 391 S.W.3d 226, 227 (Tex. App.—Waco 2012, no pet.) (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)). "Further, if a no-evidence motion for summary judgment and a traditional motion for summary judgment are filed which respectively asserts the plaintiff has no evidence of an element of its claim and alternatively asserts that the movant has conclusively negated that same element of the claim, we address the no-evidence motion for summary judgment first." *Williams v. Parker*, 472 S.W.3d 467, 469-70 (Tex. App.—Waco 2015, no pet.) (citing *Ridgway*, 135 S.W.3d at 600; *Lotito*, 391 S.W.3d at 227). If a nonmovant fails to produce more than a scintilla of evidence that raises a genuine fact issue on the challenged elements of her claims, then there is no need to analyze whether the movant's summary-judgment proof on the same claim satisfied the traditional summary judgment burden of proof under Texas Rule of Civil Procedure 166a(c). *See* TEX. R. CIV. P. 166a(c); *see also Ridgway*, 135 S.W.3d at 600.

Premises liability is a special form of negligence in which the premises owner's duty is generally determined by the plaintiff's status as an invitee, licensee, or trespasser. *Taylor v. Louis*, 349 S.W.3d 729, 734 (Tex. App.—Houston [14th Dist.] 2011, no pet.). A possessor of land owes the highest duty of care to an invitee, the next highest duty of care to a licensee, and the lowest duty of care to a trespasser. *See Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 660 (Tex. 1999) (plurality op.) (Enoch, J., concurring). A licensee is a person who enters the premises with the possessor's express or implied permission, but only for the licensee's convenience or on business for someone other than the possessor. *Knorpp v. Hale*, 981 S.W.2d 469, 471 (Tex. App.—Texarkana 1998, no pet.). The difference between a licensee and an invitee is that an invitee is on the premises for the mutual benefit of herself and the possessor, while a licensee is there only for her own purposes, not because of any business dealings with the possessor. *Mayer v. Willowbrook Plaza, L.P.*, 278 S.W.3d 901, 910 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Under a premises-liability theory, the duty owed to a licensee is not to injure the licensee willfully, wantonly, or through grossly-negligent conduct. *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992) (op. on reh'g); *see Almanza v. Nayar*, 225 S.W.3d 14, 21 (Tex. App.—El Paso 2005, no pet.). When the possessor of the premises has actual knowledge of a dangerous condition and the licensee does not, the possessor owes a duty either to warn the licensee of the danger or to make the condition reasonably safe. *Univ. of Tex.-*

*Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam); *see State v. Williams*, 940 s.W.2d 583, 584 (Tex. 1996) (per curiam).

Here, the parties agree that Gontarek was a licensee. The elements of a cause of action for premises liability brought by a licensee are: (1) the defendant was a possessor of the premises; (2) a condition on the premises posed an unreasonable risk of harm; (3) the defendant had actual knowledge of the danger; (4) the plaintiff did not have actual knowledge of the danger; (5) the defendant breached his duty of care by both failing to adequately warn the plaintiff of the condition and failing to make the condition reasonably safe; and (6) the defendant's breach proximately cause the plaintiff's injury. *See Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 391 (Tex. 2016); *see also Jacobson v. Ron*, No. 01-08-00645-CV, 2009 Tex. App. LEXIS 415, at *12 (Tex. App.—Houston [1st Dist.] Jan. 22, 2009, pet. denied) (mem. op.). If the licensee has the same knowledge about the dangerous condition as the licensor, then no duty to the licensee exists. *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003) (per curiam).

Gontarek alleged that appellees had control over the premises where she was injured and that appellees negligently permitted the porch to deteriorate and willfully failed to warn Gontarek of the condition of the floor. Specifically, Gontarek alleged that:

> At all times pertinent herein, Defendants were guilty of negligent conduct toward the Plaintiff in:
>
> A. Failing to properly inspect and maintain the flooring area in question to discover the dangerous condition;

B. Failing to maintain the floor in a reasonably safe condition;

C. Failing to give adequate and understandable warnings to Plaintiff of the unsafe condition of the flooring area;

D. Failing to give warnings to Plaintiff of the unsafe condition;

E. Failing to remove the old rotten wood boards causing the Plaintiff to fall through the porch;

F. Failing to provide adequate lighting of the area in question; and

G. Failing to discover and remove the old rotten wood boards in the porch within a reasonable time.

Gontarek also asserted that all the foregoing acts and omissions constituted a direct and proximate cause of her injuries.

Appellees filed no-evidence and traditional motions for summary judgment, arguing they owed no duty to warn Gontarek of the condition of the porch because the premises conditions were open and obvious, and because Gontarek was aware that another family member had fallen through the floor of the porch. Appellees also asserted that Gontarek failed to provide summary-judgment evidence to support each element of her premises-liability claim.

Gontarek filed a response to appellees' motions for summary judgment with eight exhibits attached to the response. Because appellees filed both traditional and no-evidence motions for summary judgment, we address the no-evidence motion for summary judgment first. *See Ridgway*, 135 S.W.3d at 600; *Williams*, 472 S.W.3d at 469-70; *Lotito*, 391 S.W.3d at 227. And in doing so, we only consider evidence attached to

Gontarek's response to appellees' motions for summary judgment, unless Gontarek directed the trial court to evidence included with appellees' motions. *See Stettner v. Lewis & Maese Auction, LLC*, 611 S.W.3d 102, 109 (Tex. App.—Houston [14th Dist.] 2020, no pet.) ("In reviewing the propriety of summary judgment on no-evidence grounds, we ignore evidence attached to a combined summary-judgment motion and offered in support of traditional-summary-judgment grounds, unless the non-movant directed the trial court to that evidence in response to the movant's no-evidence motion."); *see also Dyer v. Accredited Home Lenders, Inc.*, No. 02-11-00046-CV, 2012 Tex. App. LEXIS 877, at *9 (Tex. App.—Fort Worth Feb. 2, 2012, pet. denied) (mem. op.) (same).

### Whether Appellees Were Possessors of the Premises

Among the exhibits attached to Gontarek's response was Gontarek's oral deposition where she stated that on the day of the incident, Ivan and Lou Ann owned and lived at the residence where Gontarek was injured. This statement was corroborated by appellees' admission in discovery that they "exercised control over the 'home residence' located at 20167 CR 224, Oakwood, Texas"—the property where Gontarek was injured. Taking as true all evidence favorable to Gontarek, and indulging every reasonable inference in her favor, we conclude that Gontarek presented more than a scintilla of evidence that appellees were possessors of the premises.

**Whether the Condition of the Porch Posed an Unreasonable Risk of Harm**

A condition is not unreasonably dangerous simply because it is not foolproof. *See*

*Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408 (Tex. 2006).

> Many building materials will, over time, deteriorate and require repair or replacement. That does not necessarily mean that the owner or occupier has created a dangerous condition or that the owner has actual or constructive knowledge of a dangerous condition. For example, we know that asphalt roads will develop potholes over time and will require repair. That does not mean that asphalt roads constitute an unreasonable risk of harm from the day they are constructed.

*CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101-02 (Tex. 2000). "A condition is

unreasonably dangerous if it presents an unreasonable risk of harm." *Pipken v. Kroger*

*Tex., L.P.*, 383 S.W.3d 655, 671 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). The

extent to which a condition is unreasonably dangerous is ordinarily a fact question, but

under some facts and circumstances, may be determined as a matter of law. *See id.* "'A

condition presenting an unreasonable risk of harm is one in which there is such a

probability of a harmful event occurring that a reasonably prudent person would have

foreseen it or some similar event as likely to happen.'" *Reliable Consultants, Inc. v. Jacquez*,

25 S.W.3d 336, 341 (Tex. App.—Austin 2000, pet. denied) (quoting *Seideneck v. Cal*

*Bayreuther & Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970)).

There is no definitive, objective test that may be applied to determine whether a

specific condition presents an unreasonable risk of harm. *See Seideneck*, 451 S.W.2d at 754.

When determining whether the harmful event that resulted from a condition was

probable and foreseeable, courts often consider, among other things, evidence of other falls or injuries attributable to the same condition and evidence of some defective condition causing the fall; and, such evidence is probative, but not conclusive. *See id.* Courts may consider (1) whether the condition was clearly marked, (2) the height of the condition, (3) whether injuries had occurred in the past, (4) whether other invitees had complained about the condition, (5) whether the condition was unusual, (6) whether the construction or placement of the condition would serve as a warning that the object presented a prohibited degree of danger, (7) whether the invitee had reasonable alternatives other than to go through the area where the condition was located, and (8) whether the condition met applicable safety standards. *See, e.g., Valentine v. ASA Holdings Real Estate Mgmt.*, No. 09-18-00447-CV, 2020 Tex. App. LEXIS 2146, at **14-15 (Tex. App.—Beaumont Mar. 12, 2020, no pet.) (mem. op.).

In her deposition, Gontarek agreed that the "there's an extensive amount of rot" on the portion of the porch where Gontarek was injured. Gontarek also attached affidavits executed by Gontarek's stepsisters, Lita Wallace and Betty J. Gardner. Wallace and Gardner both opined that:

> "On April 30, 2018, the flooring of the back and side deck was rotting in many places and there were many holes in that flooring. The front deck had new flooring that . . . James Rendon had installed. The difference between the old flooring and new flooring was obvious."

Wallace also recounted that she had fallen through the back-porch flooring prior to Gontarek's accident.

Taking as true all evidence favorable to Gontarek, and indulging every reasonable inference in her favor, we conclude that Gontarek presented more than a scintilla of evidence demonstrating that the condition of the porch posed an unreasonable risk of harm.

**Whether Appellees Had Actual Knowledge of the Danger**

"'Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time.'" *Sampson*, 500 S.W.3d at 397 (quoting *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414-15 (Tex. 2008)). For actual knowledge, courts generally consider whether the premises owner had received reports of prior injuries or reports of the potential danger presented by the condition. *Aguilar*, 251 S.W.3d at 513-14 (holding that nothing in the University's safety manual remotely suggested that a water hose could present an unreasonable risk of harm). Constructive knowledge can be established by facts or inferences that a dangerous condition could develop over time. *Stewart*, 249 S.W.3d at 414-15.

In her affidavit, Wallace noted that on one occasion prior to April 30, 2018, she "fell through an old section of the porch flooring. Leslie happened to be visiting our parents that day, and she helped me get out of the hole my leg had fallen through." And as stated earlier, Wallace emphasized that on the date of Gontarek's fall, "the flooring of the back and side deck was rotting in many places and there were many holes in that

flooring. The front deck had new flooring that [Wallace's] son, James Rendon, had installed. The difference between the old flooring and new flooring was obvious." Wallace also stated that Ivan "would routinely caution visitors to be careful when walking onto the back porch." Gardner echoed Wallace's sentiments, describing the rotting back and side decks and that Ivan "would routinely caution visitors to be careful when walking onto the back porch."

As relevant to this element, James stated in his affidavit that:

4. Sometime prior to April 30, 2018, I was at my grandparents' property, and I heard several family members discussing how bad the porch flooring was. I knew that porch flooring was in poor condition because I could see the wood deteriorating and some holes in the flooring. . . .

5. When everyone but my grandparents left, I asked my grandfather [Ivan] if I could replace the porch flooring. My grandfather agreed and said that he would pay for the cost of the wood.

6. I first decided to replace the front porch flooring because more people would walk up that porch to access the house. After the front porch was finished, I planned on moving to the side and back porch. On April 30, 2018, I had only completed the front porch.

Taking as true all evidence favorable to Gontarek, and indulging every reasonable inference in her favor, we conclude that Gontarek presented more than a scintilla of evidence demonstrating that appellees had actual knowledge of the deteriorating porch at the time of the incident involving Gontarek.

**Whether Gontarek Had Actual Knowledge of the Danger**

Gontarek mentioned in her deposition that she did not recall seeing the extensive amount of rot on the back porch prior to this incident. When asked if she was "aware of any issues with respect to the porches at your dad's house" prior to the incident, Gontarek responded,

> No. I had been told by my father that my step-nephew, James [Rendon], had repaired the porch, that he had put in new porches. And I could tell that he had, from when I looked out the front, because it was all brand new. He had come in and re-decked everything. It was nice.

Gontarek agreed that her accident did not occur where James had replaced the decking. Gontarek further testified that the accident occurred at around 10:30 or 11:00 p.m. and that when she "went outside to check and see, to make sure that their dog was okay . . . whenever [she] came out the door and took a left, it was black so—they just had the little yellow light . . . halfway in between the door and getting to the edge of the porch there, [she] fell through."

Moreover, Gontarek provided the following response to the following question contained in appellees' request for production and written interrogatories:

> 9. With respect to the condition you complain of as causing your injury[,] describe your awareness of the condition prior to the accident—include information concerning communication with the family regarding needed repairs to the porches at the residence and collecting money for repairs.
>
> **RESPONSE:**
>
> Plaintiff's understanding is that the porch was not bad. She understood the porch had been rebuilt with a wheelchair access put in.

(Emphasis in original.)

Despite the foregoing, appellees contend that Gontarek cannot rely on statements made by Ivan under the Dead Man's Rule, Texas Rule of Evidence 601(b). *See* TEX. R. EVID. 601(b). The Dead Man's Rule generally prohibits a party to certain types of lawsuits from testifying regarding oral statements by a decedent unless the statements are corroborated or were solicited by the opposing party. TEX. R. EVID. 601(b); *see Estate of Wright*, 482 S.W.3d 650, 655 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). Courts construe the Dead Man's Rule narrowly. *Fraga v. Drake*, 276 S.W.3d 55, 61 (Tex. App.—El Paso 2008, no pet.); *Coleman v. Coleman*, 170 S.W.3d 231, 239 (Tex. App.—Dallas 2005, pet. denied). To evade the rule, corroborating evidence need not be sufficient standing alone but must tend to confirm and strengthen the testimony of the witness and show the probability of its truth. *Fraga*, 276 S.W.3d at 61; *Coleman*, 170 S.W.3d at 239.

Here, appellees objected in the trial court under the Dead Man's Rule to Gontarek's testimony that Ivan had told her that the porches had been repaired. Notwithstanding the fact that the trial court did not explicitly rule on appellees' objection under the Dead Man's Rule, we note that appellees attached much of the complained-of deposition testimony to their combined no-evidence and traditional summary-judgment motions. *See, e.g., Dyson v. Parker*, No. 10-14-00232-CV, 2015 Tex. App. LEXIS 9044, at *8 (Tex. App.—Waco Aug. 27, 2015, no pet.) (mem. op.) ("By Parker's use of Dyson's testimony, Parker waived the benefit, if any, of the Dead Man's Rule."). Moreover, in the deposition

testimony attached to appellees' summary-judgment motions, the following exchange between Gontarek and appellees' counsel demonstrates potential waiver of the Dead Man's Rule:

> Q:  And which part of the porch or ramp or whatever do you think that— your term, Little James, or step-nephew James, did he actually work on?
>
> A:  Honestly, I don't know.  I don't know now.  I know what he was supposed to do, but I don't know what he did.
>
> Q:  What was it he was supposed to do?
>
> A:  He was supposed to repair any place—he was supposed to replace all the wood on the porch, all the way around, so that my dad wouldn't fall through it, or so my dad wouldn't get injured or so that Ann wouldn't get hurt.
>
> Q:  Your knowledge or understanding that that's what he was supposed to do, when did you get that information?
>
> A:  Well, my dad had told me that Little James was over there, working on the porch, before I came up.
>
> And so I'm like, "Okay.  What's he doing?"
>
> "Oh, he's replacing all the decking."
>
> "Oh, okay."   And that's the reason I knew about it then.   But then my brother was—was irritated that it hadn't been to his satisfaction.

*See id.* at *7 (noting that the Dead Man's Rule is waived "when the matters are inquired about in a deposition, written interrogatories, or requests for admission.  Specifically, when a party by those types of pre-trial procedures initiates an inquiry and requires testimony by the other party relative to a statement with a decedent which is covered by

Rule 601(b), the statute is waived by the inquiring party, and at trial, the other party may testify fully regarding such statement." (citing *Lewis v. Foster*, 621 S.W.2d 400, 403 n.3 (Tex. 1981); *Fleming v. Baylor Univ. Med. Ctr.*, 554 S.W.2d 263, 266 (Tex. Civ. App.—Waco 1977, writ ref'd n.r.e.))). Therefore, based on the foregoing, appellees waived the benefit, if any, of the Dead Man's Rule. *See Dyson*, 2015 Tex. App. LEXIS 9044, at **7-8.

However, even if appellees had preserved their complaint under the Dead Man's Rule, we find that Gontarek's summary-judgment evidence sufficiently corroborated the complained-of testimony. Specifically, Wallace, Gardner, and Rendon all executed affidavits recounting that Rendon had been employed to repair the rotting porches.

Taking as true all evidence favorable to Gontarek, including Gontarek's testimony about what Ivan had told her, and indulging every reasonable inference in her favor, we conclude that Gontarek presented more than a scintilla of evidence demonstrating that she did not have actual knowledge of the dangerous condition at the time of the accident.

**Whether Appellees Breached Their Duty of Care**

With regard to the element pertaining to appellees' duty of care, the Texas Supreme Court has stated that:

> "It is well settled in this State that if the person injured was on the premises as a licensee, the duty that the proprietor or licensor owed him was not to injure him by willful, wanton or gross negligence. . . . An exception to the general rule is that when the licensor has knowledge of a dangerous condition, and the licensee does not, a duty is owed on the part of the licensor to either warn the licensee or to make the condition reasonably safe."

*Miller*, 102 S.W.3d at 709 (quoting *State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974) (citations omitted)). "Accordingly, to establish liability for a premises defect, a licensee must prove, among other things, that the licensee did not actually know about the alleged dangerous condition. *Id.* (citations omitted). "If the licensee has the same knowledge about the dangerous condition as the licensor, then no duty to the licensee exists." Id. (citations omitted); *see Lower Neches Valley Auth. v. Murphy*, 536 S.W.2d 561, 564 (Tex. 1976) ("A licensee is not entitled to expect that the possessor [of land] will warn him of conditions that are perceptible to him, or the existence of which can be inferred from facts within his present or past knowledge.").

It is undisputed that at the time of the accident, the back porch where Gontarek fell had not been repaired by James and that "the flooring of the back and side deck was rotting in many places and there were many holes in that flooring." Furthermore, although Wallace and Gardner mentioned in their affidavits that Ivan routinely warned people of the dangerous condition of the porches, Gontarek testified in her deposition that Ivan told her that the porches had been repaired and that she was unaware of the dangerous condition of the back porch when she stepped onto the dimly-lit porch at approximately 10:30 or 11:00 p.m.

Taking as true all evidence favorable to Gontarek, and indulging every reasonable inference in her favor, we conclude that Gontarek presented more than a scintilla of evidence demonstrating that appellees failed to warn Gontarek of the dangerous

condition of the back porch and that appellees failed to make the back porch reasonably safe.

**Proximate Causation**

The proximate cause element of a premises-liability claim has two components: cause-in-fact and foreseeability. *See LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006); *see also Hill v. Fitness Int'l, LLC*, No. 02-22-00142-CV, 2023 Tex. App. LEXIS 1906, at *37 (Tex. App.—Fort Worth Mar. 23, 2023, no pet.) (mem. op.). The test for cause-in-fact, or "but for" causation, is whether: (1) the act or omission was a substantial factor in causing the injury; and (2) without the act or omission the harm would not have occurred. *LMB, Ltd.*, 201 S.W.3d at 688. A premises-liability plaintiff facing a no-evidence summary-judgment motion has the burden to produce summary-judgment evidence that her accident was a foreseeable result of the defendant's failure to use reasonable care to reduce or eliminate an unreasonably dangerous premises condition and that the defendant's failure was a substantial factor in causing her injuries. *See id.* Mere proof that the injuries occurred on the defendant's premises is not proof of such proximate cause. *Id.*

Gontarek provided deposition testimony, as well as medical bills that amounted to more than a scintilla of evidence as to the proximate-causation element. Specifically, Gontarek described how she fell through the back porch, which, as mentioned earlier, was in a dangerous condition with rotting wood and holes in the floor, and that she

sought medical care at Palestine Regional Medical Center. Gontarek explained that on the night in question, her right foot fell through a hole in the porch resulting in her foot touching the ground and wood splinters in her leg. She then "got back up on [her] feet. I was having a little bit of a problem; my knee hurt really bad. But everything was hurting. So I went in there and asked if Ann could take me to the hospital, and then I asked if I could call 911. I ended up having to drive myself to Palestine Hospital." In her responses to appellees' request for production and written interrogatories, Gontarek noted that she sustained injuries to her neck, lower back, and right knee as a result of falling through the porch. Gontarek also included her medical bills from Palestine Regional Medical Center, which indicated that she incurred an initial charge of $890.22.

Taking as true all evidence favorable to Gontarek, and indulging every reasonable inference in her favor, we conclude that Gontarek presented more than a scintilla of evidence demonstrating that appellees' failure to warn Gontarek of the dangerous condition of the back porch and appellees' failure to make the back porch reasonably safe proximately caused Gontarek's injuries.

**Summary**

Having found more than a scintilla of evidence to support each element of Gontarek's premises-liability claim against appellees, we conclude that the trial court erred by granting, to the extent that it did, appellees' no-evidence motion for summary judgment. Accordingly, we sustain Gontarek's third issue, in part.

Appellees moved for traditional summary judgment on two grounds: (1) that the condition of the back porch was "open and obvious"; and (2) that Gontarek was aware of the alleged defect. In support of their traditional motion for summary judgment, appellees relied on Gontarek's deposition testimony, as well as the affidavits executed by Wallace, Gardner, and Rendon. Specifically, in support of their argument that the condition of the back porch was "open and obvious," appellees embedded daytime pictures of the back porch in their summary-judgment motion.

In a premises-liability case, a danger is "open and obvious" when the evidence conclusively establishes that an individual would have "knowledge and full appreciation of the nature and extent of danger," such that "knowledge and appreciation of the danger are considered as provided as a matter of law." *Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 788 (Tex. 2021). "Whether a danger is open and obvious is a question of law determined under an objective test." *Id.* "The question is whether the danger is so open and obvious that as a matter of law [the plaintiff] will be charged with knowledge and appreciation thereof." *Id.* (internal citation & quotation omitted). "Under the objective standard, the question is not what the plaintiff subjectively or actually knew but what a reasonably prudent person would have known under similar circumstances." *Id.* "To properly apply an objective test, we must consider the totality of the particular circumstances the plaintiff faced." *Id.* at 788-89.

While the parties agree that the pictures embedded in appellees' summary-judgment motion depict the deteriorated condition of the back porch at the time of the accident, the summary-judgment evidence indicates that the accident occurred at night and that the back porch was dimly lit. While darkness alone may not constitute an open and obvious danger, *see, e.g., Padron v. Catholic Diocese of Austin*, No. 06-18-00087-CV, 2019 Tex. App. LEXIS 2838, at *13 (Tex. App.—Texarkana Apr. 10, 2019, no pet.) (mem. op.) (concluding that the Diocese and School conclusively negated a duty to make safe or warn Padron of the open and notorious danger of walking down a dark stairway because Padron was aware of the risks and could have avoided them "by turning on the light, requesting that someone turn on the light, or walking back up to the classroom to seek assistance from the principal to illuminate the side stairway"), the facts that the back porch was rotting and had holes in it and that Ivan told Gontarek that Rendon had repaired the decking on the porches could cause a reasonably prudent person to believe that the back porch was safe to traverse. And although Wallace noted in her affidavit that Gontarek helped Wallace get out of a hole in the porch previously, Ivan's representation that the porches had been repaired and Gontarek's testimony that she was unaware of the existing dangerousness of the back porch raises a material fact issue as to Gontarek's knowledge of the dangerous condition at the time of the accident. Accordingly, we cannot say that appellees conclusively demonstrated that the alleged

premises defect was open and obvious or that Gontarek was aware of the alleged defect at the time of the accident.

As outlined above, the evidence that created fact issues in response to the no-evidence motion for summary judgment also creates fact issues precluding summary judgment on traditional grounds. *See Arredondo v. Techserv Consulting & Training, Ltd.*, 567 S.W.3d 383, 400 (Tex. App.—San Antonio 2018), *aff'd in part and rev'd in part on other grounds*, 612 S.W.3d 289 (Tex. 2020); *see also Harkins v. Wal-Mart Stores Tex., LLC*, No. 02-21-00201-CV, 2022 Tex. App. LEXIS 6085, at **25-26 (Tex. App.—Fort Worth Aug. 18, 2022, pet. denied) (mem. op. on reh'g). As such, we hold that the trial court erred by granting appellees' traditional motion for summary judgment. We sustain Gontarek's first and second issues.

GONTAREK'S ALLEGED NEGLIGENCE CLAIM AND HER FOURTH ISSUE

Gontarek also alleges in her third issue that the trial court erred by granting summary judgment as to her negligence claim. The Texas Supreme Court has stated that:

> "[A] person injured on another's property may have either a negligence claim or a premises-liability claim against the property owner. When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply. When the injury is the result of the property's condition rather than an activity, premises-liability principles apply."

*United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017) (quoting *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016)). "Negligence and premises liability claims this are separate and distinct theories of recovery, requiring plaintiffs to prove

different, albeit similar, elements to secure judgment in their favor." *Id.* (citing *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 775-76 (Tex. 2010); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992)). "Because negligence and premises liability claims are based on independent theories of recovery, we have held that they are not interchangeable." *Id.* (citing *Occidental Chem. Corp.*, 478 S.W.3d at 644; *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 529 (Tex. 1997)).

Gontarek alleged that appellees had control over the premises where she was injured and that appellees negligently permitted the porch to deteriorate and willfully failed to warn Gontarek of the condition of the floor. Specifically, Gontarek alleged that:

> At all times pertinent herein, Defendants were guilty of negligent conduct toward the Plaintiff in:
>
> H. Failing to properly inspect and maintain the flooring area in question to discover the dangerous condition;
>
> I. Failing to maintain the floor in a reasonably safe condition;
>
> J. Failing to give adequate and understandable warnings to Plaintiff of the unsafe condition of the flooring area;
>
> K. Failing to give warnings to Plaintiff of the unsafe condition;
>
> L. Failing to remove the old rotten wood boards causing the Plaintiff to fall through the porch;
>
> M. Failing to provide adequate lighting of the area in question; and
>
> N. Failing to discover and remove the old rotten wood boards in the porch within a reasonable time.

Because Gontarek has claimed that her injuries result from the condition of appellees' property, the alleged inaction taken by appellees are duties imposed under premises liability, and because Gontarek has not pled additional, distinct facts alleging contemporaneous, negligent activity on the property by appellees, we conclude that Gontarek's claims sound in premises liability. *See id.* ("In a negligent-activity case, a property owner or occupier must 'do what a person of ordinary prudence in the same or similar circumstances would have . . . done,' whereas a property owner or occupier in a premises liability case must 'use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier [of land] knows about or in the exercise of ordinary care should know about." (quoting *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998)); *see also TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 765 (Tex. 2009) ("[A] premises owner or occupier must either adequately warn of the dangerous condition or make the condition reasonably safe."). And because we conclude that Gontarek did not allege a distinct negligence cause of action, we overrule her third issue, in part.

In her fourth issue, Gontarek contends that the trial court erred by failing to grant a new trial based on newly-discovered evidence that would have further corroborated the statements Ivan made to Gontarek. Because our resolution of Gontarek's first three issues affords her the greatest relief, we need not address her fourth issue. *See* TEX. R. APP. P. 47.1, 47.4.

## Conclusion

Having sustained Gontarek's first and second issues and her third issue, in part, we reverse the trial court's November 3, 2022 order granting summary judgment in favor of appellees and remand for proceedings consistent with this opinion.

MATT JOHNSON
Justice

Before Chief Justice Gray
      Justice Johnson, and
      Justice Smith
(Chief Justice Gray dissenting without a note.)
Reversed and remanded
Opinion delivered and filed August 30, 2023
[CV06]

